1
2
3
4                         UNITED STATES DISTRICT COURT
5                       NORTHERN DISTRICT OF CALIFORNIA
6                               SAN JOSE DIVISION
7

8    UNITED STATES OF AMERICA,                Case No.   5:18-cr-00503-EJD-1
                         Plaintiff,
9                                             **ORDER GRANTING MOTION TO
                                              DISMISS INDICTMENT**
10              v.
11   ALVARO FLORES-VASQUEZ,                   Re: ECF No. 22
                         Defendant.
12

13          Before the Court is Defendant Alvaro Flores-Vasquez's ("Defendant") motion to dismiss

14   the indictment for violation of his Sixth Amendment right to a speedy trial.  Mot., ECF No. 22.

15   This motion is fully briefed, including supplemental briefs filed after additional discovery.  Opp'n,

16   ECF No. 24; Reply, ECF No. 29; Supp. Mot., ECF No. 46; Supp. Opp'n, ECF No. 50; Supp.

17   Reply, ECF No. 53.  The Court held a hearing on August 25, 2025, and heard oral arguments from

18   both parties.  ECF No. 55.

19          For the following reasons, the Court **GRANTS** Defendant's motion to dismiss the

20   indictment.

21   **I.      BACKGROUND**

22          The Government filed the indictment in this case on October 11, 2018, and arrested

23   Defendant on August 26, 2023, nearly five years later.  Defendant argues that the Government's

24   five-year delay violated his Sixth Amendment right to a speedy trial.  The following series of

25   events are relevant to the Court's analysis.

26          Defendant entered the United States in 2001 with Temporary Protective Status ("TPS").

27   Supp. Opp'n, Ex. A, ECF No. 50-1.  Following a conviction in 2005, his TPS was not renewed,

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1  and he was ordered deported in 2007. [1]  *Id.*  Defendant returned sometime thereafter and was

2  arrested for a DUI in Santa Clara County on April 2, 2018.  Mot., Ex. A, ECF No. 22-1.

3  Defendant provided the officers his alias, Oscar Ardon.  *Id.*  However, Defendant's identity was

4  soon discovered based on his biometrics.  *Id.*  The Department of Homeland Security ("DHS")

5  also identified Defendant based on his biometrics and lodged an immigration detainer against him.

6  Mot., Ex. B, ECF No. 22-2.  Defendant posted bond and was subsequently released.  Mot., Ex. D,

7  ECF No. 22-4.  The immigration detainer was not honored, per the County's policy.  Mot. 3 n.2.

8         On September 19, 2018, Defendant completed the Santa Clara County DUI first offender

9  program.  Mot., Ex. H, ECF No. 22-8.  Shortly after, he entered a no-contest plea to reckless

10  driving involving alcohol on September 25, 2018.  Mot., Ex. D.  The court sentenced Defendant to

11  fifty days in custody, three years of probation, and fines and fees.  *Id.*  Approximately two weeks

12  later, on October 11, 2018, the Government filed the indictment in this case for one count of

13  illegal reentry in violation of 8 U.S.C. §§ 1326(a) and (b)(2), and the Court issued an arrest

14  warrant.  Indictment, ECF No. 1.  The indictment alleges an April 2, 2018, found-in date.  *Id.*

15         Defendant was re-booked in Santa Clara County jail to serve his sentence approximately

16  seventeen days later, on October 28, 2018.  Mot., Ex. G, ECF No. 22-7.  He was booked under the

17  same Personal File Number ("PFN") noted in his immigration detainer.  *Id.*  The Government did

18  not place a federal hold on him at that time.  Defendant subsequently served his sentence through

19  the Sheriff's Weekend Work Program from November 1, 2018, through November 17, 2018.  *Id.*

20         ICE began its search for Defendant nearly one year later, in October 2019.  Supp. Mot., Ex.

21  O, ECF No. 49-10.  It created a Field Operations Worksheet on October 16, 2019, that listed four

22  addresses connected to Defendant: (1) his address at Ranchero Way in San Jose; (2) the address in

23  probation's records[2] at Reseda Drive in Sunnyvale, where his sister lived; (3) his mother's address

24  at El Camino Real in Santa Clara; and (4) his sister's address at Dias Ave in Sacramento.  *Id.*  The

25

26  _____
   [1] Though the Government discusses in depth the details of his conviction and removal, *see* Supp.
   Opp'n 2–3, these facts are irrelevant to the Court's analysis.
27  [2] The Field Operations Worksheet also noted that ICE obtained information "per probation," but
   there is no other information regarding communications with "probation."
28  Case No.: 5:18-cr-00503-EJD-1
   ORDER GRANTING MOTION TO DISMISS INDICTMENT

1    worksheet also noted nine of Defendant's relatives and their respective addresses. *Id.* The
2    Government never attempted to contact any known family member.

3          On October 25, 2019, the Government advised the Court that Defendant was a "fugitive,"
4    and the case was re-assigned to the Executive Committee. Order Reassigning Fugitive Criminal
5    Case, ECF No. 2.

6          On October 30, 2019, ICE surveilled the El Camino Real address and observed two males
7    and a female exist the apartment, but did not see Defendant. *See* Supp. Mot., Ex. O. ICE did not
8    attempt to knock on the door or speak with anyone at the apartment. Approximately five months
9    later, and two years after his initial arrest in Santa Clara County, ICE requested copies of the
10   police report from this arrest. Supp. Mot., Ex. L, ECF No. 46-2. The report included Defendant's
11   sister's address and Defendant's current phone number. *Id.* ICE later conducted unsuccessful
12   surveillance efforts at the Ranchero Way and El Camino Real addresses between July 2020 and
13   January 2021. Supp. Opp'n, Ex. C, ECF No. 50-3. Again, ICE did not attempt to knock on the
14   door or speak with anyone at the house during its surveillance efforts.

15         Meanwhile, Defendant had been paying off the fines and fees associated with his Santa
16   Clara sentence and completed all payments on September 24, 2020. Mot., Ex. J, ECF No. 22-10.
17   The address listed for his payments remains the same address where his sister and brother-in-law
18   live.

19         For the next two years, ICE periodically conducted routine database checks and carried out
20   one unsuccessful surveillance at the Ranchero Way address and El Camino Real address. Supp.
21   Opp'n, Ex. C, ECF No. 50-3. Again, ICE did not attempt to knock on the door or speak with
22   anyone at any residence.

23         Nearly two years later, the South Dakota State Highway Patrol stopped Defendant for
24   speeding on August 26, 2023, and arrested him on an outstanding immigration warrant and the
25   warrant issued in this case. Supp. Opp'n, Ex. C. On October 4, 2023, Defendant appeared in this
26   district and entered a plea of not guilty. *See* ECF No. 5.

27

28   Case No.: 5:18-cr-00503-EJD-1
     ORDER GRANTING MOTION TO DISMISS INDICTMENT

United States District Court
Northern District of California

## II.    DISCUSSION

The Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972), identified four factors to weigh in determining whether a delay rises to the level of a Sixth Amendment violation: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice resulting from the delay." *United States v. King*, 483 F.3d 969, 976 (9th Cir. 2007) (citing *Barker*, 407 U.S. at 531–33).  The Court finds all factors weigh in favor of granting Defendant's motion.

### A.    Length of Delay

Under the Sixth Amendment, delay is generally measured from "the time of the indictment to the time of trial." *United States v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003).  Courts have also measured delay from the date of the indictment to the time of arrest or initial appearance. *See, e.g., United States v. Espinoza-Ruelas*, 753 F. Supp. 3d 830, 383 (N.D. Cal. 2024) (measuring delay between indictment and arrest); *United States v. Gonzalez-Martinez*, 634 F. Supp. 3d 853, 863 (E.D. Cal. 2022) (same).  The Ninth Circuit has said that the length of delay must be at least presumptively prejudicial[3]—i.e., one year from the time of the indictment to the time of the arrest or trial—to meet this first factor and trigger a court's consideration of the other *Barker* factors.  *Id.* at 1161–62; *see also King*, 483 F.3d at 976.  And even if the delay passes the one-year threshold, it "does not weigh heavily" in the defendant's favor if it is not "excessively long."  *Id.* (twenty-two-month delay was not "excessively long"); *see also United States v. Beamon*, 992 F.2d 1009, 1014 (9th Cir. 1993) (seventeen-month and twenty-month delays were not "great"); *contra United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992) ("Five years delay attributable to the government's mishandling of Shell's file, like the eight year delay in *Doggett,* creates a strong presumption of prejudice.").

The Court finds that the five-year delay between the indictment and Defendant's arrest not only satisfies this factor, but under the Ninth Circuit's decision in *Shell*, "creates a strong presumption of prejudice." *Shell*, 974 F.2d at 1036 (five-year delay); *see also United States v.*

---

[3] In this way, this factor has some overlap with the last factor, which further examines prejudice.

1    *Alexander*, 817 F.3d 1178, 1181 (9th Cir. 2016) ("[T]he delay of almost five years is sufficiently

2    lengthy to trigger an inquiry into the other factors."); *United States v. Reynolds*, 231 F. App'x 629,

3    631 (9th Cir. 2007) ("The district court erred in finding that the four-year, eight-month delay

4    between Reynolds's indictment and his arrest was not uncommonly long.") (unpublished).

5    　　　　The Government concedes that the delay here satisfies the first factor, stating that "four-to-

6    five years is a considerable delay, and longer than many of the delays frequently cited as not

7    'excessive' and not 'great.'"  Opp'n 6.  However, the Government contends that it is not *so long* as

8    to trigger a *strong* presumption of prejudice, such as the delays in *Doggett v. United States*, 505

9    U.S. 647, 651–52 (1992) (delay of over eight years) and *United States v. Mendoza*, 530 F.3d 758

10    (9th Cir. 2008) (delay of ten years).  The Court finds the Government's argument unpersuasive.

11    The Ninth Circuit in *Shell* explicitly cited to the Supreme Court's decision in *Doggett* and found

12    the five-year delay in *Shell* similarly "excessive" to the eight-year delay in *Doggett*.  The

13    Government failed to address this finding from *Shell* and therefore failed to provide the Court any

14    reason to depart from it.

15    　　　　**B.    Reason for Delay**

16    　　　　The next factor—the reason for the delay—is "the focal point of the inquiry."  *King*, 483

17    F.3d at 976.  This element essentially examines whether a defendant or the government was more

18    to blame for the delay.  *See id.*  The government has an obligation to pursue a defendant and bring

19    him to trial with reasonable diligence.  *Mendoza*, 530 F.3d at 762–63.  While the government is

20    not required to "make heroic efforts" to locate a defendant who is purposefully avoiding

21    apprehension, *United States v. Sandoval*, 990 F.2d 481, 485 (9th Cir. 1993), the government is

22    considered negligent when the defendant is not attempting to avoid detection, and the government

23    makes no serious effort with reasonable diligence to find him.  *Mendoza*, 530 F.3d at 762–63.

24    Such negligence "falls on the wrong side of the divide between acceptable and unacceptable

25    reasons for delaying a criminal prosecution once it has begun."  *Doggett*, 505 U.S. at 657.

26    　　　　The Court finds that this factor weighs in favor of Defendant.  The evidence shows that

27    Defendant was living openly for five years, and the Government failed to use the information

28    Case No.: 5:18-cr-00503-EJD-1
ORDER GRANTING MOTION TO DISMISS INDICTMENT
5

United States District Court
Northern District of California

1  available to it to arrest Defendant with reasonable diligence.

2         First, the Government could have, but did not, track Defendant's state court proceedings.

3  Following the indictment filed on October 11, 2018, Defendant was re-booked in the Santa Clara

4  County jail on October 28, 2018, to serve his sentence.[4]  He was booked under the same PFN

5  associated with the prior immigration detainer.  While Defendant did not serve his sentence in

6  custody, had the Government diligently followed the state court proceedings and issued a federal

7  hold on him, they could have arrested him at that time.  Defendant then served his sentence

8  through the Sheriff's Weekend Work Program from November 1, 2018, through November 17,

9  2018, providing another opportunity for the Government to execute the arrest warrant.  Defendant

10  also consistently paid the fines and fees associated with his sentence until he completed all

11  payments on September 24, 2020, yet the Government made no effort to obtain any information

12  from his payment records.

13         Second, the Government waited approximately one year before even beginning to search

14  for Defendant in October 2019.  And notably, while ICE created a Field Operations Worksheet on

15  October 16, 2019, it appears they did not carry out any surveillance efforts until October 30,

16  2019—five days after the Government represented to the Court that Defendant was a "fugitive."

17         Third, ICE failed to request a copy of the police report from the DUI arrest until two years

18  after the incident, on April 2, 2020.[5]  This police report contained not only a family member's

19  address, but also Defendant's phone number, which was in use at that time.  Despite having his

20  cell phone number, the Government made no attempt to call Defendant or track him through his

21  phone.

22         Fourth, despite having contact information for nine of Defendant's family members as of

23  October 2019, the Government never attempted to contact any family member at any time.

24  _____

25  [4] See Part I. for citations to the facts discussed in Part III.
   [5] The Government defends this delay by arguing that, "to the extent that Flores-Vasquez offers
26  that law enforcement could have asked for the records of his arrest more quickly, precisely who to
   ask for said records is only evident upon some reflection . . . ."  Supp. Opp'n 14.  This is no
27  excuse.  The Court expects the Government to be fully capable of determining which local law
   enforcement department to contact for an arrest record without needing two years for "reflection."
28  Case No.: 5:18-cr-00503-EJD-1
   ORDER GRANTING MOTION TO DISMISS INDICTMENT
                                          6

1    Fifth, the Government's surveillance efforts fell short of reasonable diligence.  At no point

2    during any surveillance effort did ICE approach a house, knock on a door, or attempt to speak with

3    any resident.  The attempts at surveillance were also few and far between—ICE surveilled

4    approximately one address in October 2019, two addresses sometime between July 2020 and

5    January 2021, and two addresses in May 2022.  Notably, they never surveilled his address at

6    Tasman Street.

7    The Court finds these facts analogous with those in *Espinoza-Ruelas*, where the court

8    similarly found that the government failed to diligently apprehend the defendant during the nine

9    years that passed between the indictment and his arrest.  *Espinoza-Ruelas*, 753 F. Supp. 3d at 835–

10   37.  Though the government attempted to surveil his house three times and thought he moved

11   based on information from a family member, they ceased surveillance efforts too soon—the

12   defendant continued to live there for three years after his indictment.  *Id.*  The government also

13   made no attempt to contact family members, despite having contact information.  *Id.*  And while

14   the defendant resided at different addresses over time, there was no evidence that he attempted to

15   conceal his location.  *Id.*  Although the defendant had used aliases in the past, all his aliases were

16   known to the government.  *Id.*; *see also United States v. Vasquez*, 15 F. Supp. 3d 1000, 1003 (E.D.

17   Cal. 2014) (rejecting the government's diligence argument where the government surveilled the

18   address about ten times for six months and then relied on database searches); *United States v.*

19   *Serrano*, 829 F. Supp. 2d 910, 914 (S.D. Cal. 2011) (rejecting diligence argument based on a

20   single attempt to locate the defendant followed by database searches).[6]

21   The Government argues the delay is not a result of their negligence, but instead the result

22   of factors outside of their control, including: (1) the COVID-19 pandemic; (2) Santa Clara

23   County's policies regarding immigration enforcement; (3) the lack of help anticipated from

24

---

25   [6] The Court is unpersuaded by the Government's attempt distinguish *Espinoza-Ruelas*.  The
26   Government highlights the nine-year delay there and the fact that the defendant never used his
     aliases during that time.  However, the length of the delay has little bearing on the Court's
27   discussion of the reason for the delay, and the Government has only presented evidence of
     Defendant using his alias once during his DUI arrest, which occurred prior to his indictment.

28   Case No.: 5:18-cr-00503-EJD-1
     ORDER GRANTING MOTION TO DISMISS INDICTMENT
                                    7

United States District Court
Northern District of California

1    Defendant's family; and (4) Defendant's use of various addresses and aliases. The Court finds

2    each of the Government's justifications unpersuasive.

3        First, though the Government cites generally to COVID-19 as a cause for their delay, they

4    provide the Court no evidence or arguments as to how the pandemic affected their efforts in this

5    case specifically. And notably, approximately seventeen months passed between the indictment

6    and the start of the pandemic, during which time the Government took little to no action.

7        Second, it is true that Santa Clara County has in place certain policies against assisting

8    immigration officials in the enforcement of immigration laws. However, this is not an

9    immigration case; this is a federal criminal indictment before a district court. Defendant presented

10   evidence that Santa Clara County actively supports the Government in the investigation of federal

11   crimes such as the one here, and the Government has failed to rebut that evidence.

12       Third, the Government has similarly provided no evidence to support their argument that

13   contacting Defendant's family members would have proven fruitless. This unsupported

14   assumption does not justify the Government's failure to attempt contact.

15       Finally, all evidence in the record suggests that Defendant lived openly during those five

16   years, unaware of this indictment. While Defendant traveled between different family members'

17   homes, there is no evidence that this was done to evade arrest—and importantly, the Government

18   had knowledge of every address where Defendant stayed. And while Defendant provided an alias

19   to the officers during his Santa Clara arrest in 2018, there is no evidence that he used an alias

20   again during the five years between the indictment and his arrest. *See Gonzalez-Martinez*, 634 F.

21   Supp. 3d 853 (drawing a distinction between attempting to evade detection in connection with

22   criminal conduct occurring at that time and the subsequent adoption of an alias after learning

23   about a new indictment). And even if he had, the Government again had knowledge of any alias

24   Defendant used in the past. *See Espinoza-Ruelas,* 753 F. Supp. 3d 830 (noting the government's

25   knowledge of all aliases).

26       Therefore, considering the information readily available to the Government, the Court

27   finds its attempts at surveillance and routine database checks insufficient to establish reasonable

28   Case No.: 5:18-cr-00503-EJD-1
     ORDER GRANTING MOTION TO DISMISS INDICTMENT

*United States District Court*
*Northern District of California*

8

1  diligence.

2      **C.      Defendant's Assertion of the Right**

3      The third factor requires that Defendant assert his right to a speedy trial. *Barker*, 407 U.S.

4  at 531. "[A] defendant's obligation to assert his speedy trial right only arises after he knows that

5  he has been indicted." *Espinoza-Ruelas*, 753 F. Supp. 3d at 838 (citing *United States v. Beamon*,

6  992 F.2d 1009, 1013 (9th Cir. 1993) (finding no fault on defendants for not asserting speedy trial

7  right without knowing they were indicted)).

8      There is no dispute that Defendant met this requirement—Defendant informed the

9  Government of his intent to assert his right to a speedy trial when he first appeared in this district

10  on October 4, 2023, and the defense formally asserted the right when he made his first district

11  court appearance on November 6, 2023. There is no evidence that Defendant knew of this

12  indictment at any point prior to his arrest in this case.

13      The Government concedes that this factor is satisfied but argues the factor should be

14  neutral because trial has not yet been set, and the parties have made several agreements for

15  continuances. The Court finds the Government's arguments unsupported by case law and

16  irrelevant to the inquiry here—as discussed in the first factor, the right to a speedy trial can be

17  measured from the time of the indictment to the time of the arrest, regardless of whether a trial

18  date has been set. *See Espinoza-Ruelas*, 753 F. Supp. 3d; *Gonzalez-Martinez*, 634 F. Supp. 3d.

19  The Court also notes that some of the continuances in this matter were due to the Government's

20  delay in producing discovery related to Defendant's motion to dismiss to indictment.

21      **D.      Prejudice**

22      The remaining and "critical" *Barker* factor is whether Defendants have been actually

23  prejudiced as a result of the delay. *Gregory*, 322 F.3d at 1162. "[N]o showing of prejudice is

24  required when the delay is great and attributable to the government." *Id.* at 1162–63 (internal

25  quotation marks omitted). However, the government can "persuasively rebut" this presumption

26  with evidence of actual prejudice. *Shell*, 974 F.2d at 1036.

27      As the Court found above, the five-year delay here is excessive and attributable to the

28  Case No.: 5:18-cr-00503-EJD-1
ORDER GRANTING MOTION TO DISMISS INDICTMENT

United States District Court
Northern District of California

Government.  Therefore, Defendant is not required to show actual prejudice, and the burden is on the Government to rebut the presumed prejudice with evidence.  *Id.*  The Court finds the Government failed to meet this burden.  Three kinds of prejudice are generally associated with a speedy trial violation: oppressive pretrial incarceration; anxiety and concern of the accused; and the possibility that the accused's defense will be impaired.  *See Beamon*, 992 F.2d at 1014 (citing *Doggett*, 505 U.S. at 654).  The relevant prejudice here is the possibility that the delay will impair the defense.  The Government argues that the delay will not impair the defense because the Government can rely on documents to prove its case-in-chief, the reliability of which are generally not impacted by the passage of time.  However, the Government offers no evidence and fails to address the potential loss of documents or witness memory related to any defense Defendant might have asserted.  *See Shell*, 974 F.2d at 1036 ("[The government] suggests that because Shell has conceded that most of the essential witnesses and documentary evidence is still available, the presumption of prejudice is rebutted. We are not persuaded. Although [*Doggett*] did not define precisely what type of evidence must be shown to rebut the presumption, we have little doubt that the government has failed to meet its burden here.").

* * *

The Court finds that the five-year delay between the indictment and arrest was excessive; the delay was the result of the Government's negligence; Defendant asserted his right to a speedy trial; and the Government failed to rebut the presumption of prejudice.  Accordingly, the Court finds that the Government violated Defendant's Sixth Amendment right to a speedy trial and dismissal is appropriate under *Barker*.

## III.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's motion to dismiss the indictment.

1    **IT IS SO ORDERED.**

2    Dated: September 8, 2025

3

4    _____

5    EDWARD J. DAVILA
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    Case No.: 5:18-cr-00503-EJD-1
      ORDER GRANTING MOTION TO DISMISS INDICTMENT
                              11

United States District Court
Northern District of California